# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| Joel Iacopelli, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 9:16-cv-287-PMD-BM |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Town of Port Royal, Robert Bilyard, John Griffith, Beaufort County Department of Social Services, and Latasha Williams, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| Marianne Iacopelli, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 9:16-cv-288-PMD-BM |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Town of Port Royal, Robert Bilyard, Beaufort County Department of Social Services, and Latasha Williams, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the Court on the objections of Plaintiffs Joel and Marianne Iacopelli, Defendant Robert Bilyard, and Defendant John Griffith to United States Magistrate Judge Bristow Marchant's Report and Recommendation ("R & R") (ECF Nos. 125, 126, 127, & 120).[1] For the reasons stated herein, the Court overrules all of the parties' objections and adopts the R & R. Accordingly, the Court denies Defendants Bilyard's and Griffith's motions for summary judgment with respect to Joel Iacopelli's federal false arrest claim, and grants their motions for summary

---
1. These cases have been consolidated for pre-trial and discovery purposes. All ECF numbers refer to 9:19-cv-287.

judgment with respect to Plaintiffs' search warrant claims. The Court further grants summary judgment to the Town of Port Royal and Latasha Williams on the federal claims asserted against them.

## BACKGROUND & PROCEDURAL HISTORY

The Court adopts the lengthy background set out in the R & R, and briefly summarizes that background. On June 29, 2015, a mother reported the possible sexual assault of her young child while the child was in the care of the Sunday school of Community Bible Church. According to the mother, the child reported that an adult had moved aside the child's underwear and licked her. The child reported the same thing to her father, though she also said she was making it up. The mother took the child to their pediatrician the day after the alleged abuse, and the pediatrician informed her that they were required to report allegations of sexual abuse to law enforcement. The mother then filed a report with the Port Royal Police Department and provided the child's clothing for DNA testing. The police investigation that followed led to the arrest of Joel Iacopelli on July 10, 2015, multiple searches of his home (shared with his wife, Marianne, and their children), and the seizure of his computers. Iacopelli was released on bond on July 24. On August 20, following a preliminary hearing, a county magistrate judge dismissed the charges against Iacopelli for lack of probable cause.

Joel and Marianne Iacopelli each filed 42 U.S.C. § 1983 actions on December 31, 2015, alleging unreasonable search and seizure, unlawful deprivation of property, unreasonable disruption of their family life, and violations of due process. Some of the original defendants have been dismissed. On August 7, 2017, Defendant John Griffith, a Port Royal police captain (and only named in Joel Iacopelli's suit) moved for summary judgment. Defendant Robert Bilyard, a Port Royal Police chief detective, moved for summary judgment in Joel's suit on November 13,

2017 and in Marianne's suit on November 29.  The Town of Port Royal moved for summary judgment in both cases on November 13.  Defendants Beaufort County Department of Social Services ("DSS") and Latasha Williams, a DSS officer, filed for summary judgment in both cases on December 8.  On May 2, 2018, the Magistrate Judge issued his R & R, to be filed in both cases.  Plaintiffs objected on May 15 and Bilyard and Griffith each objected on May 16.  The Beaufort County Department of Social Services and Williams replied to Plaintiffs' objections on May 22, and Griffith replied to Plaintiffs' objections on May 29.  Accordingly, this matter is now ripe for review.

## STANDARD OF REVIEW FOR THE R & R

The Magistrate Judge makes only a recommendation to this Court.  The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  Parties may make written objections to the R & R within fourteen days after being served with a copy of it.  28 U.S.C. § 636(b)(1).  This Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and it may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part.  *Id.*  Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions.  *Id.*  A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

**DISCUSSION**

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). The Court addresses each of the objections in turn.

**I. Objections to the Factual Background**

Plaintiffs first seek to add factual details to the R & R. They note (1) that Joel Iacopelli's release on bond was conditioned on his use of a GPS monitor and that he was not allowed to have contact with minor children other than his own; (2) that no evidence of saliva was found on the child's clothing; and (3) that Bilyard had no training in investigating criminal sexual conduct cases involving minors. Plaintiffs have attached evidence of each of these claims and the Court takes note of these details in conducting its analysis. Plaintiffs also ask the Court to recognize that Bilyard did not tell Assistant Solicitor Mary Concannon Jones, who he consulted regarding the investigation, that Iacopelli had provided DNA samples during a voluntary interview. While there is not a record that clearly states this omission occurred, the Court assumes this is true for purposes of its analysis based on the fact that Iacopelli did provide DNA samples during a voluntary interview and this interview was not mentioned by Bilyard or another investigator in consultation

with Jones.  Finally, the Court acknowledges that Plaintiffs have attached a signed copy of the Jones' affidavit in response to the Magistrate Judge's observation that the previously-submitted affidavit was unsigned, presumably due to a clerical error.

The Court also takes note of Griffith's clarification that the video the police obtained from the church hallway could not have conclusively ruled out that an assault occurred in the room where the child was, adjacent to the hallway, since the interior of the room is not shown in the video.

## II.    Objections Regarding Plaintiff Iacopelli's Arrest and Incarceration

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston–Salem*, 85 F.3d 178, 183 (4th Cir. 1996).  There is probable cause to justify an arrest if, in light of the facts and circumstances known to the officer at the time of arrest, a reasonable and prudent person would infer there was a fair probability that the suspect committed a crime.  *Robinson v. City of S. Charleston*, 662 F. App'x 216, 220 (4th Cir. 2016).  "[I]f the question is sufficiently close that an objectively reasonable officer could conclude that probable cause existed, then the individual defendants are entitled to qualified immunity." *Id.*

The Magistrate Judge found that at the time Bilyard sought and obtained an arrest warrant for Joel Iacopelli, he had the following incriminating evidence: the mother's report that her child stated she was sexually abused by a male Sunday school teacher, the mother's statement that she left her child with Iacopelli, and the child's repetition of her statement to her father and to a forensic interviewer.  However, Bilyard also had evidence that multiple individuals, including Iacopelli, stated that he had not arrived at the church until well after the mother said she dropped off her child with him, that the child had previously stated that the family dog had licked her in a similar

5

manner (possibly suggesting a fabrication or misstatement), that two witnesses said Iacopelli was never alone with the child that day, and that, on at least one occasion, the child told her father that she had made up the claim.

The Magistrate Judge also noted that there was a dispute about what was said during a conversation between Bilyard and Assistant Solicitor Mary Concannon Jones. Bilyard claims Jones offered a professional opinion that there was probable cause to arrest Iacopelli, while Jones maintains she was not told all the relevant information and that her statement that there was probable cause was based on her understanding that Bilyard had provided all relevant details. Viewing the conversation in the light most favorable to Plaintiffs, and in light of the conflicting pieces of evidence, the Magistrate Judge found that there was a question of fact as to whether a reasonable and prudent person would have concluded there was probable cause for Joel Iacopelli's arrest. *Robinson*, 662 F. App'x at 220. The Magistrate Judge further found that there was a question of fact about whether Griffith was objectively reasonable in allegedly ordering Bilyard to obtain an arrest warrant, having been briefed on some of these same conflicting pieces of evidence.[2] Additionally, he found that the officers were not entitled to qualified immunity. Consequently, he found neither Bilyard nor Griffith was entitled to summary judgment on the false arrest claim.

Bilyard and Griffith each object to the Magistrate Judge's finding that they are not entitled to qualified immunity on Joel Iacopelli's false arrest claim. Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."

---

2. Griffith claims that he did not order Bilyard to obtain an arrest warrant and left this decision to Bilyard. However, viewing the facts in the light most favorable to Plaintiffs, the Court assumes for purposes of Griffith's summary judgment motion that he did order Bilyard to obtain the arrest warrant.

*Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An officer is entitled to qualified immunity unless the facts, taken in the light most favorable to the plaintiff, show that the officer violated a constitutional right and that the right at issue was clearly established. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). If "a reasonable person in the officer's position 'could have failed to appreciate that his conduct would violate those rights,'" then they are not clearly established. *Id.* (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)).

### A. Whether Bilyard or Griffith Violated Iacopelli's Constitutional Rights

Bilyard and Griffith argue that they did not violate Iacopelli's rights by pursuing his arrest since the statement of the child, even if uncorroborated, provides probable cause under state law. Specifically, they note that Iacopelli was accused of violating South Carolina Code section 16-3-655, and that South Carolina law provides that, "The testimony of the victim need not be corroborated in prosecutions under Sections 16-3-652 through 16-3-658." S.C. Code Ann. § 16-3-657. However, this argument oversimplifies the probable cause analysis. While the statute specifies that a victim's testimony need not be corroborated, it does not instruct an officer that he may ignore evidence creating uncertainty and calling for further investigation.[3] This is particularly true when a child's account lacks detail and she provides the name of one person and the physical description of another.[4]

The Fourth Circuit has explained that a more searching analysis is required to determine if an officer's pursuit of an arrest violated a plaintiff's constitutional rights, and thus whether the first

---

3. The presence of facts that undermine a finding of probable cause distinguishes this case from *Gibbs v. PSI Inc.*, No. 3:13-cv-1391-SVH-MGL, 2015 WL 4744596 (D.S.C. Aug. 11, 2015).
4. The child referred to the man as "Pastor Brogie" but described him as having "black hair with polka dots of white in it." (Mot. Summ. J. Port Royal, Ex. C, Hope Haven Report, ECF No. 87-4, at 14.) Pastor Broggi was a pastor at Community Bible Church who was not watching her that day, while Joel Iacopelli was described as having dark hair with a portion dyed white or blond.

7

prong of the qualified immunity inquiry goes in favor of the plaintiff or the officer. *Miller v. Prince George's Cty.* 475 F.3d 621, 627 (4th Cir. 2007). The court explained that a warrant affidavit can become unconstitutionally misleading when an officer acts with reckless disregard for the truth by "fail[ing] to inform the judicial officer of facts [he] knew would negate probable cause." *Id.* at 627 (4th Cir. 2007) (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)). To establish a constitutional violation, these omissions must be material. *Id.* at 628. "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the "corrected" warrant affidavit would establish probable cause.'" *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). Here, Bilyard's affidavit stated that there was probable cause to believe Iacopelli committed criminal sexual conduct with a minor, described the conduct, and said, "This was revealed during a forensic interview of the victim. Affiants investigation and witnesses will prove the same." (Mot. Dismiss, Ex. 3, Arrest Warrant and Aff., ECF No. 88-4, at 1.) As the Magistrate Judge thoroughly explained, Bilyard's affidavit omitted many details that could undermine a finding of probable cause; thus, there is a question of fact regarding whether these omissions are material. Moreover, the Court agrees with the Magistrate Judge that there is a question of fact regarding whether Bilyard knew these omissions would negate probable cause. Thus, the Court rejects Bilyard's argument that his actions were objectively reasonable, and that there was probable cause to arrest Iacopelli solely because the child made consistent statements that described sexual abuse. Because the Court agrees with the Magistrate Judge that there is a question of fact regarding probable cause, the Court finds that Bilyard is not entitled to qualified immunity on the basis that he did not violate Iacopelli's constitutional rights.

With respect to Griffith, the facts taken in the light most favorable to Plaintiffs indicate that he directed Bilyard to pursue the arrest warrant. Since there is a question of fact regarding whether that arrest warrant was supported by probable cause, the Court finds that Griffith is also not entitled to qualified immunity on the basis that he did not violate Iacopelli's rights.

**B. Whether Iacopelli's Right to be Free from Seizure Was Clearly Established**

Bilyard and Griffith argue that even if they violated Iacopelli's rights, they are nonetheless entitled to qualified immunity if the constitutional rights they violated were not clearly established. They object to the Magistrate Judge's finding that Iacopelli's constitutional rights were clearly established. The Magistrate Judge explained that "it was clearly established in 2015 that a law enforcement officer could be held liable for false arrest if a reasonable and prudent person could conclude that the evidence as a whole was not sufficient to establish probable cause . . . ." (R & R, ECF No. 120, at 29.) Bilyard and Griffith argue that this is not the proper framing of the "clearly established" prong of the qualified immunity inquiry.

Bilyard argues that there was no clearly established law that would have put him on notice that the statements of the victim child were not sufficient to establish probable cause given the many, very particular, circumstances of the case. However, the extremely high degree of specificity he demands is not supported by precedent. The Fourth Circuit has explained that a court should identify "the specific right allegedly violated," *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992); but in the very same case it also clarified, "The fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes." *Id.* at 314. "Clearly established" rights include those that have been specifically adjudicated as well as those "manifestly included within more general applications of the core constitutional principle

9

invoked." *Id.* Thus, contrary to Bilyard's assertion, the Court does not need to address whether Iacopelli had a right to be free from arrest given the many specific details of the case, which have likely never been before a court as part of the same incident.

Looking to the contours of the right to be free from unreasonable arrests, the Fourth Circuit has said that the "clearly established" prong turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Saucier*, 533 U.S. at 201–02 (2002)). If "a reasonable person in the officer's position 'could have failed to appreciate that his conduct would violate [an arrestee's constitutional] rights,'" then those rights are not clearly established. *Meyers*, 713 F.3d at 731 (quoting *Torchinsky*, 942 F.2d at 261). Bilyard and Griffith argue that they could reasonably believe their actions leading to Iacopelli's arrest were lawful, even if that belief turned out to be incorrect, because they relied on South Carolina Code section 16-3-657, because they relied on the view of Assistant Solicitor Jones that there was probable cause, and because a magistrate judge signed the arrest warrant. For the reasons discussed above, the Court finds that an objectively reasonable officer would not infer that he may ignore conflicting evidence simply because section 16-3-657 states that a victim's testimony does not need to be corroborated. Even if corroboration is not necessary, it does not follow that an uncorroborated statement is a sufficient basis for an arrest, especially when that statement lacks clarity and there is conflicting evidence. The Court also holds that the officers' reliance on the probable cause determinations of the solicitor and the magistrate judge were not objectively reasonable. As discussed above, there is a dispute about exactly what was said in the conversation between Bilyard and Assistant Solicitor Jones. Plaintiffs concede that she did say there was probable cause, but they (and Jones) maintain that she was not told about the many pieces of evidence that could undermine a determination that there was

probable cause. Similarly, as discussed above, the affidavit provided to the magistrate judge who signed the arrest warrant did not include any of the facts that undermine a finding of probable cause. The officers are correct that reliance on the advice of a prosecutor weighs in favor of finding they were objectively reasonable, *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000), and that every exculpatory detail need not be included in a warrant affidavit, *Evans v. Chalmers*, 703 F.3d 636, 651 (4th Cir. 2012). However, it is not objectively reasonable for an officer to rely on the advice of a prosecutor or the approval of a judge when the officer knows he has only communicated the facts that support a finding of probable cause, and that he has omitted the many details that might negate a finding of probable cause. *See id.* at 647 ("even when . . . a prosecutor retains all discretion to seek an indictment, police officers may be held to have caused the seizure and remain liable . . . when they have lied to or misled the prosecutor"). The Court holds that it is clear to an objectively reasonable officer that it is unlawful to rely on the probable cause determination of a prosecutor or judge when the officer has told that person only the facts that weigh in favor of finding probable cause. Thus, the Court holds that the rights at issue were clearly established and Bilyard and Griffith are not entitled to qualified immunity on the false arrest claim.

III. **Objections Regarding Searches**

   A. **Defendant Bilyard**

Plaintiffs each bring claims against Bilyard for unreasonable searches based on a series of warrants he obtained and executed for Plaintiffs' computers and home security system. These warrants were obtained after Joel Iacopelli informed police that he had a home security system with surveillance video that could confirm when he left his house on the day of the alleged incident, but also told police he might have trouble getting it to work. As the Magistrate Judge explained, Plaintiffs can survive summary judgment on their search warrant claims only if the evidence raises

11

a general issue of fact that Bilyard included false statements in the warrant affidavit, and that he did so either knowingly and intentionally, or with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The Magistrate Judge found that Bilyard was entitled to summary judgment because he had reason to believe that evidence related to the assault could be found on the computers, he obtained search warrants, and there was nothing untrue or misleading in the affidavits he provided to the magistrate judge that authorized the warrants. The Magistrate Judge acknowledged that the language used for the items sought could have been improved upon, but found that it was not unconstitutionally vague when viewed as a whole.

Plaintiffs object to the scope of the search conducted following the first search warrant (number 164). Search warrant 164 authorized officers to search and seize "any and all items related to the security recording of video of the [the Iacopelli home], surveillance equipment or computer which stores the video of said premises and the cellular telephone." (Pls.' Resp. Opp'n Bilyard Mot. Summ. J., Ex. 18, Search Warrants Vol. 1, ECF No. 99-18, at 2.) In executing this search warrant, Bilyard and other officers seized a Defender Home Security unit, Joel Iacopelli's iPhone, an Apple computer, a Lenovo computer, and an iPad. Plaintiffs concede that it was proper for Bilyard to take the Defender Home Security unit and the iPhone (which had an application for the home security system), but they claim that the seizure of the three other computers exceeded the scope of the warrant. They argue that Bilyard could not have held a constitutionally reasonable belief that the search warrant allowed him to seize these computers and that the Magistrate Judge failed to address their argument based on *Groh v. Ramirez*, 540 U.S. 551 (2004). *Groh* stands for the proposition that an officer is not entitled to qualified immunity when he relies on a warrant that completely fails to identify the items to be seized, and therefore fails the particularity requirement for warrants. *Id.* at 557, 563–65. In *Groh*, the warrant was facially invalid because it described

the house to be searched in the portion of the form where it should have indicated the items to be seized, and was otherwise silent on which items the warrant was for (though they were described in a supporting affidavit). *Id.* at 554–57. While the Magistrate Judge did not refer to *Groh* specifically, he found that none of the warrants were unconstitutionally vague. The Court agrees. While Plaintiffs frame their argument as a matter of exceeding the scope of the search warrant, their reliance on *Groh*, as well as *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), and their argument in their response in opposition to Bilyard's motion make clear that they are really arguing that search warrant 164 was impermissibly lacking in particularity. But warrant 164 is far more specific than the warrant in *Groh* and states that it covers security equipment and related computers. While the Court must view the facts in the light most favorable to Plaintiffs, they do not identify any evidence or information to suggest that it would be unreasonable for Bilyard to infer that the three seized computers might interface with the security system or store videos from it, especially given that Bilyard already knew that at least the iPhone had an application for the security system. The Court agrees with the Magistrate Judge's conclusion that there is no genuine issue of fact regarding whether Bilyard's seizure of the three computers was unreasonable or unconstitutional.

Next, Plaintiffs object that it was unconstitutional for Bilyard to obtain three additional warrants[5] based on his suspicion that Iacopelli's computers may have child pornography stored on them. As the Magistrate Judge explained, while evidence of sexual assault is, on its own, insufficient to justify a search for child pornography, *United States v. Doyle*, 650 F.3d 460, 472 (4th Cir. 2011), there were other sufficient justifications to obtain additional computers and search the files of those already taken, and Bilyard did not rely solely on his suspicions regarding child

---

5. Two of these additional warrants were to search the files of Joel Iacopelli's iPhone and a tablet already in police possession; the third warrant, number 169, was for "any computers belonging to Joel Iacopelli or any work computers that he has access to." (Pls.' Resp. Opp'n Bilyard Mot. Summ. J., Ex. 19, Search Warrants Vol. 2, ECF No. 99-19, at 2.)

13

pornography in seeking additional warrants. Instead, Bilyard was prompted to seek the additional computers when Joel Iacopelli spoke to Marianne Iacopelli using a monitored jail telephone and told her to move some laptops that were not seized during the first search (possibly only because they were in his car at the time). Further, Bilyard had reason to search the files of the devices that were already seized because he still had not accessed any applications that controlled the home surveillance system or any footage from it.[6] Thus, the Court agrees that these search warrants were not impermissibly based purely on a suspicion that Iacopelli's computers contained child pornography.

Plaintiffs also claim in their objections that the Magistrate Judge failed to view the facts in the light most favorable to them when evaluating Bilyard's actions regarding the search warrants. Their objection arises from some ambiguities in the record: One of the warrants Bilyard obtained on July 16, warrant number 169, authorized the seizure of additional computers. When Bilyard went to the Iacopelli house to execute the warrant, he gave Marianne an unsigned copy that lacked a handwritten addition that is present on the copy signed by the magistrate judge. It is not known when the addition was made, and it states, "Another jail call the defendant Joel Iacopelli did tell his wife that he did not want the police to get his computers." (Pls.' Resp. Opp'n Bilyard Mot. Summ. J., Ex. 19, Search Warrants Vol. 2, ECF No. 99-19, at 3.) Both copies state that during a monitored jail call, Joel instructed Marianne to take two computers from his car into the house. Bilyard was later asked in a deposition whether he saw anything sinister or criminal in Joel asking Marianne to take computers into the house from his car and Bilyard responded that it could "go

---

6. Plaintiffs also argue that by July 16, the date Bilyard obtained the additional warrants, it was no longer necessary to watch the home surveillance video since, on July 13, Bilyard watched the church surveillance video, which showed Joel Iacopelli at the church at 11:14am on the day of the incident. However, Bilyard had seen video of one church hallway, and Joel Iacopelli had stated that the home security footage would show when he left his house (though he may have trouble retrieving the footage). Therefore, the home security footage could have provided further evidence that he was not at the church before 11:14am somewhere other than the hallway, and either bolster or undermine his credibility regarding statements he had made to police up to that point.

both ways." (Pls.' Resp. Opp'n Bilyard Mot. Summ. J., Ex. 3, Bilyard Dep., ECF No. 98-3, at 8.) The Magistrate Judge properly stated all of these facts and nothing about his statement of them is disputed. However, Plaintiffs assert that he failed to view the facts in the light most favorable to them because the Magistrate Judge wrote, in a footnote, that ". . . Joel's efforts to hide these computers from the police so as to impede their investigation would have raised the suspicions of a reasonable officer. . . ." (R & R, ECF No. 120, at 39 n.31). Plaintiffs argue that the Magistrate Judge's characterization that Joel Iacopelli was trying to "hide" the computers is contrary to the evidence viewed in the light most favorable to Plaintiffs, and that, when viewed properly, the jail calls only show that Joel wanted Marianne to move the computers. The Court finds that the Magistrate Judge did not make any improper inferences. It is undisputed that by July 16, the police already had a warrant (number 164) to obtain computers that may be connected to the home security system and that Joel asked Marianne to move computers from his car to the house over a jail call after that search warrant was executed. Regardless of when the handwritten addition to the warrant was made, Plaintiffs do not claim that the addition is inaccurate and that Joel never conveyed to Marianne that he did not want police to obtain these two computers.[7] Moreover, the Magistrate Judge clarified in the very sentence that the Plaintiffs object to that, ". . . in any event the [home security system] rationale for the seizure of these computers previously presented still applied." (R & R, ECF No. 120, at 39 n.31). Thus, even if it was improper for the Magistrate Judge to characterize Joel's actions as an attempt to "hide" the computers, that characterization is immaterial given that the Magistrate Judge properly laid out all the facts and found it was reasonable for Bilyard to obtain warrant 169 irrespective of the nuances of the jail calls.

---

7. Though not mentioned by the Magistrate Judge, Bilyard's Incident Report includes an entry on July 16 which also describes two separate calls—one in which Joel tells Marianne to move the computers from the car to the house, and another in which he says he does not want the police to get them—consistent with the handwritten note on the warrant. (Def. Port Royal's Mot. Summ. J., Ex. E, Incident Reports, ECF No. 87-6, at 13.)

Plaintiffs also object to the warrants obtained on July 18 and 20 for reasons addressed above. These objections are overruled for the same basic reasons as set forth above. However, the Court notes that some of these warrants had additional support since, between July 16 and July 17, the police learned that Marianne lied to them about which computers were in her possession, concocted a story about a courier service from Joel's employer that had taken one of the computers, and took additional computers to Plaintiffs' attorney's office. A reasonable officer would have additional reason to suspect the computers contained evidence in light of the fact that Marianne lied about their whereabouts and then hid them.

Plaintiffs also object to the Magistrate Judge's conclusion that Bilyard's affidavits did not contain any false or misleading statements given that Bilyard said the police had information that Joel Iacopelli left his house prior to 10:00am in the warrant to search the hard drive of the security system, which was signed on July 20. Plaintiffs argue this is misleading because by July 20, Bilyard had watched the church surveillance video that showed Joel Iacopelli arriving at 11:14am, and officers had spoken to two church officials who said he was not there for the 9:00am class. However, an officer need not disclose every possibly exculpatory detail in an affidavit. *See Evans*, 703 F.3d at 651. These omissions did not negate probable cause because the home security video could have corroborated, or called into question, the statements of the church officials and showed where Joel Iacopelli was prior to 11:14. As Bilyard stated in the affidavit, even with the evidence the police had gathered, they had reason to believe that the video footage would show when Iacopelli actually left his house. Thus, the Court overrules Plaintiffs' objection that this affidavit was misleading.

Finally, Plaintiffs object that "The Report also seemed to consider that [police detective] Hogue had 'negative contact' with Joel as somehow raising a suspicion." (Pls.' Objs., ECF No.

16

125, at 9.) The Magistrate Judge mentions once that Hogue said he had "negative results" when he attempted to contact Iacopelli on a particular occasion prior to his arrest. No inferences or findings in the R & R are based on this fact. The Court finds there is no indication the Magistrate Judge viewed this failure to get in touch with Iacopelli as raising anyone's suspicions.

### B. Defendant Griffith

Joel Iacopelli claims that Griffith is also liable for the searches and seizures of his computers. The Magistrate Judge found that Griffith is entitled to dismissal of this claim, regardless of the reasonableness of Bilyard's actions, since Plaintiffs have presented no evidence that Griffith ordered Bilyard to engage in any improper conduct. At most, Griffith told Bilyard to obtain search warrants for Iacopelli's computers. As the Magistrate Judge explained, that assertion does not raise a question of fact regarding whether Griffith ordered Bilyard to do anything illegal. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Additionally, since Plaintiffs merely repeat an argument already presented and fully addressed by the Magistrate Judge, this is not a proper objection. *Anderson v. Dobson*, 627 F. Supp. 2d 619, 623 (W.D.N.C. 2007) ("An 'objection' that . . . simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

### C. Magistrate Judge Brooks

Plaintiffs also object that the magistrate judge who signed the search and arrest warrants, Beaufort County Magistrate Judge Richard Brooks, was a "rubber stamp" for the police. As the Magistrate Judge explained with respect to the municipal judges involved in the case, judges enjoy absolute immunity for actions they take in their official, judicial capacity. *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a

claim for damages arising out of his judicial actions."). Moreover, the magistrate judge is not a party in either suit.

IV.     **Objections Regarding Defendant Williams**

Finally, Plaintiffs object to the Magistrate Judge's finding that DSS officer Latasha Williams should be granted summary judgment on their claims that she violated their right to be free from governmental interference in their family relationship and for unreasonably invading their federally protected interest in their family and home. The Magistrate Judge properly balanced Plaintiffs' familial rights and the government's obligation to protect children from abuse. *See Martin v. St. Mary's DSS*, 346 F.3d 502, 506 (4th Cir. 2003). However, Plaintiffs object to the "manner and abuse of power by Willliams." (Pls.' Objs., ECF No. 125, at 11.) This is merely a restatement of the argument that was presented to the Magistrate Judge and is thus not a proper objection. *Anderson*, 627 F. Supp. 2d at 623.

V.      **State Law Claims**

None of the parties have objected to the Magistrate Judge's discussion of the Court's jurisdiction over the remaining state law claims. In light of the posture and facts presented, the Magistrate Judge elected not to address summary judgment arguments relating to state law claims until the Court has decided whether these claims should be remanded. The Magistrate Judge explained that if the Court adopted his recommendations on the federal claims, there would be only one remaining federal claim between the two cases—Joel Iacopelli's false arrest claim. The Magistrate Judge recommended that the Court retain jurisdiction over the false arrest claim and remand Plaintiffs' remaining claims, which are all state law claims. *See Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Dashields v. Robertson*, No. 99-1124, 2000 WL 564024, at *3 (4th Cir. May 10, 2000). The Court adopts the Magistrate Judge's recommendation and

18

remands all of the remaining claims to state court with the exception of Joel's § 1983 false arrest claim.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Plaintiffs' objections are **OVERRULED**, Defendant Bilyard's objections are **OVERRULED,** Defendant Griffith's objections are **OVERRULED,** and that the R & R is **ADOPTED**. The Court **DENIES** Defendant Bilyard's and Defendant Griffith's motions for summary judgment with respect to the false arrest claim, and **GRANTS** summary judgment with respect to Plaintiffs' claims based on the search warrants. The Court **GRANTS** summary judgment to Williams and the Town of Port Royal with respect to the federal claims asserted against them. The Court retains jurisdiction over Joel Iacopelli's federal false arrest claim and **REMANDS** all remaining claims.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**August 15, 2018**
**Charleston, South Carolina**